BROWN & *als. v.* THE TOWN OF CONCORD AND THE CONGREGATIONAL SOCIETY.

A devise of land to the town of Concord " for the use and support of the Congregational minister who shall exercise the duties of that office where the meeting-house now stands, forever," is not a devise upon condition that the town shall forever support such minister; nor is the clause to be considered a conditional or contingent limitation of the devise.

By virtue of such devise, contained in a will taking effect by the death of the testator prior to the repeal of the laws of this State authorizing towns to raise money, by public tax, for the support of the ministry, the whole estate vested

in the town; and whatever remedies any particular minister, church or society may have against the town in equity for enforcing the trust against the town, if any arises upon the devise whenever there is no longer a minister, such as is described in the will, to whose use and support the land may be applied, the heirs or residuary legatee of the devisor have no interest in the disposition of the estate, and cannot maintain a bill in equity for an account of the moneys received by the town upon a sale of the land, and for a decree that the amount unexpended in their hands be paid over to them.

Whether the doctrine of *cy pres* has been adopted in this State, *quære?*

BILL IN EQUITY, in which the following case is stated, so far as the allegations of the bill are material to be considered.

On the 27th of May, 1807, Joseph Hall, being seized of fifty-eight acres of land in Bow, made his will, and therein devised the land to the town of Concord, "for the use and support of the Congregational gospel minister who shall exercise the duties of that office where the meeting-house now stands, forever." The said Joseph Hall died seized of the land, and his will was duly proved on the 6th of July, 1807. The town of Concord accepted the devise, and appropriated the income of the land to the use limited, until March, 1825, since which time the town has made no appropriation for the support of such minister, and has been under no contract therefor. At that time the Rev. Nathaniel Bouton was ordained as pastor of the church, which, from the time of making said will, had continued to worship in the meeting-house referred to; and the said church, under the pastoral charge of said Bouton, continued to worship in that meeting-house until 1842, when they removed to a new meeting-house, which had been erected for their use, about eighty rods south of the old one, and in which said church, and the society connected with them, have ever since been accustomed to worship, and said Bouton to perform the customary public services pertaining to their minister. On the 5th of July, 1828, the town of Concord conveyed to said society all the right and title of the town in and to the old meeting-house, and on the 21st of March, 1842, the society conveyed it to the Methodist Episcopal Institute, and it has ever since been occupied for their purposes.

On the 29th of September, 1827, the town, by vote, appointed a committee to sell and convey the land devised by the will of Joseph Hall, and directed them to vest or secure the proceeds of the sale to be a permanent fund, the interest of which should be applied for the purpose for which said lot of land was devised. On the 16th of February, 1828, the committee, in behalf of the town, conveyed the land in fee to Obed Shattuck, for $575, which sum was paid to the town therefor.

These statements of the bill are admitted by the answers of the town and of the society.

The bill further states, that for many years after the sale of the land to Shattuck, but how many the orators cannot state, the town kept the control of the $575, applying the income or interest thereof yearly for the benefit of the society, and then paid the whole over to the society, and that, as the orators believe, the whole has been expended by the society, both principal and interest, and that much if not all of said fund was so expended by the society after the church and their pastor had abandoned the old meeting-house as their place of public worship.

The answers deny that the money was retained by the town any considerable time after the sale of the land, but admit that the whole sum of money, and all the securities received from said sale, were paid over and transferred to the society for the use and support of the Congregational gospel minister who should exercise the duties of that office where the meeting-house stood, forever, and allege that the whole sum, principal and interest, was applied by the society for said purpose, and no other, and was all expended before the old meeting-house was abandoned.

The bill further states, that by the will of said Hall, Jonathan Wilkins was made his residuary legatee ; that said Wilkins deceased after the death of said Hall, having made his will, which was proved on the 8th of March, 1830, and in and by which he devised to these complainants, and to those whom they represent, after certain specific legacies, all the rest and residue of his

estate, to be equally divided among them, and that at the time of his decease said Wilkins held all the interest in said land, and in the avails accruing from the sale thereof, which may have passed by the will of said Hall to him, and these statements of the bill are admitted by the answers.

The bill then charges that the town, by reason of the abandonment of the old house, and the expenditure of the whole of the fund, have forfeited all claim to the money, and that the complainants, being entitled thereto, have duly requested the town to pay over the same to them, which they have refused to do ; and prays that an account may be taken, and that the defendants may be decreed to pay the amount, when ascertained, to the complainants, and for such other relief as the case may require.

The answers of the defendants set forth that the causes of action, suit, or complaint, if any were ever had by these complainants against them, accrued more than six years before the suing out of process, and pray the benefit of the statute bar.

The cause was set down for hearing on the bill and answers.

*H. A. Bellows,* for the orators.

The intent of the testator was to create a permanent fund, the income of which should be applied to the support of a minister of a certain denomination, at a place fixed, forever.   That intent is to govern the construction of the will.   10 Bac. Abr., Amer. Ed., 1854, 533, and notes.

Ordinarily, land granted by deed for the use of the ministry will be a permanent fund.   *Harrison* v. *Bridgeton,* 16 Mass. 16.

The town held the fund in trust for that object, and continued to hold it, notwithstanding the law of 1819, repealing the authority of towns to grant money for the support of the ministry. *Candia* v. *French,* 8 N. H. 133 ; and see *Upham* v. *Varney,* 15 N. H. 462.

The town, then, as we say, had no right to expend the principal, and such was its own construction of the devise.

The vote of September 29, 1827, authorizing the sale of the

land, expressly directed the proceeds to be vested as a permanent fund, and the income thereof to be applied for the support of the minister. And beyond this the town has never authorized the expenditure of the fund. If, then, the principal has been expended by the society, it was expended without the authority or direction of the trustee, and it stands as if the fund still existed.

The devise being forfeited, the residuary devisee and his representatives, who are the complainants, take it. 4 Kent's Com. 542. The doctrine is fully sustained in *Hayden* v. *Stoughton*, 5 Pick. 528–538, which is much considered. The doctrine of that case is fully recognized in *Brigham* v. *Shattuck*, 10 Pick. 306 ; in *Clapp* v. *Stoughton*, 10 Pick. 463, and in *Von Kleek* v. *Dutch Church of N. Y.*, 20 Wendell 458, much discussed.

As to the statute of limitations, we say —

1. Complainants were under disability of coverture, and are protected. *Dustin* v. *Pierce*, 4 Foster 417. Or of infancy, and some beyond sea. *Galusha* v. *Cobleigh*, 13 N. H. 80.

2. In cases of trust the statute does not apply. Angell on Limitations 161 ; *Gregg, Appellee*, v. *Gregg*, 15 N. H. 190 ; *Matthews* v. *Bennett*, 1 Foster 204.

The question then is, was the devise forfeited by the abandonment and sale of the old meeting-house ? The object of the testator was to provide for preaching *at this place*, and it will be regarded that the devise was upon a condition subsequent. *Hayden & a.* v. *Stoughton*, 5 Pick. 528 ; *Att'y General* v. *Bishop of Oxford*, cited in *Atty'y General* v. *Bishop of Chester*, 1 Brown Ch. 444.

There is nothing in the language going to show a devise to a general charity, but for the support of the minister at the specified place, and failing that, there is nothing sufficiently specific for the application of the doctrine *cy pres*. In England this doctrine has been pushed to an extravagant length, but has not been adopted in this country to any considerable extent. In some States it has been wholly rejected. 4 Kent's Com. 508, and notes, and cases cited; see *Att'y General* v. *Andrew*, 3

Vesey 633, note *a ;* see, also, 2 Kent's Com. 286, where the capacity in a corporation to take by devise for charitable uses is discussed, not adopted in Connecticut. *White* v. *Foster & a.,* 22 Conn. 32 ; see, also, *Baptist Association* v. *Hart's Exr.,* 4 Wheaton 1.

*George & Foster,* for the respondents.

1. We say that the bequest was intended for the use and support of the minister of a particular denomination, and his successors forever, and that the complainants cannot properly interfere between the trustee and *cestui que trust.*

2. The land itself, and its proceeds, were given absolutely for such use and support. There is nothing in the will which sanctions the idea that the income only was to be thus applied. The language used in the devise, " to the minister who shall exercise the duties of that office, &c., forever," merely follow the ordinary form of a deed,." to a man and his heirs forever." The devise was made to the town while it was by law liable for the support of the minister, and necessarily resulted to the benefit of the town. Subsequently that liability was removed, and afterwards the town properly sold the land. *Going* v. *Emery,* 16 Pick. 107. And the proceeds were properly paid over to the society for whose benefit the devise then resulted. *Candia* v. *French,* 8 N. H. 133.

3. If it should be held that the devise was limited by its terms to the use of the minister who should preach in a certain building, or on a fixed locality, and that no right existed to apply the fund itself, but only the income, then we say this is a proper case for the application of the doctrine of *cy pres.* The general rule is, if lands are given to a corporation for any charitable uses which the donor contemplates to last forever, the heir can never have the land back again ; but if it should become impracticable to execute the charity, as expressed, another similar charity will be substituted, so long as the corporation exists.

If the charity does not fail, but the trustees or corporation fail, the court of chancery will substitute itself in their stead,

and thus carry on the charity. 2 Story's Equity Juris., section 1177.

4. Should the statute of limitations be held not to apply to those under disability of coverture, *so long as the coverture lasts,* it certainly runs against Mrs. Sargent, one of the complainants, who became a widow long before the cause of action accrued. In cases of trust, as between the trustee and *cestui que trust,* we admit the statute does not apply ; but we submit that this is not a case of trust, but simply a proceeding to recover a sum of money claimed to be forfeited by reason of the alleged non-performance of a trust, not to compel the execution of the trust, and the statute of limitations running against one of the complainants, and she being joined, the joinder is fatal. Story's Eq. Pl., § 509.

SAWYER, J.* The decision of this case depends upon the nature of the devise contained in the will of Joseph Hall to the town of Concord. By the terms of the devise, fifty-eight acres of land in Bow are given to the town, " for the use and support of the Congregational gospel minister who shall exercise the duties of that office where the meeting-house now stands, forever."

The positions taken by the solicitor for the complainants, as we understand the argument, are : 1. That this may be considered a devise upon condition subsequent, upon the failure of which the estate may be determined by the entry of the heir of the devisor, and that upon this view the town of Concord, having failed to comply with the requisition which the devisor chose to annex to the enjoyment of his bounty, as the condition of its continuance, the complainants having the right of the heir in the estate may come in and claim the avails received by the town from the sale of the land, as equitably belonging to them ; or, 2, that if it is held not to be a devise upon condition, but a devise to uses, or upon the trust that the land, or the income of it, should be applied to the uses limited ; then, upon the failure of the use by reason of there being no longer a minister answering to the description in the devise for whose " use and support "

* PERLEY, C. J., EASTMAN, J., and FOWLER, J., did not sit.

the fund may be applied, a trust results to the residuary legatee of the devisor, and the complainants, having the interest of the residuary legatee, may claim the avails upon that ground.

No precise form of words is necessary to create conditions in. wills ; but whenever it clearly appears that it was the testator's intention to make a condition, any words disclosing such intention will be construed, if it may be done consistently with rules of law, as expressing it. But it must clearly appear that the testator intended to qualify or restrict the devise by a provision annexed to it, that the estate created by it shall commence or be defeated upon the happening or not happening of some particular event, or in case the devisee does or omits to do some particular act ; for this is what is required to constitute a condition. If such qualifying or restricting provision is annexed, it may constitute a condition, or a conditional or contingent limitation, as may best subserve the purpose of carrying into effect the intention of the testator.

It is clear that this cannot be considered a devise upon condition. There is nothing in the nature of the devise, nor in the terms used, to indicate that it was the testator's intention to make the continuance of the estate depend upon any condition. If any such can be conceived to have been annexed to the devise, beyond that which may be said to be implied in every case of a limitation to uses, namely, that the trust shall be duly performed, it must be the condition that the town are forever to support a minister of the specified denominational character, to perform the duties of his office, at the place mentioned. It cannot be supposed that the testator so intended. To annex such condition to the devise would be unreasonable, for the wants of the community then might not require the services contemplated at that particular place ; and, indeed, it might happen, in the changes which lapse of time produces, that there would be no community there to be benefitted by the ministrations of the person thus supported. To subject the town to the burthen of the condition might, therefore, be idle and worse than idle.

The failure to perform the implied condition which attends

Brown *v.* Concord.

every devise to particular uses, that the trust shall be faithfully performed, would constitute merely a breach of trust, not working a forfeiture of the estate, but amounting only to a misapplication of the fund, for correction of which the chancery powers of the court might be resorted to, to compel the faithful performance of the trust.

The devise, then, cannot be held to give an estate upon condition.

But if this were so held, still, upon the failure of the devisee to fulfill the condition, the heirs, or residuary legatee of the devisee, may enter upon the land as forfeited, and the estate thereby becomes vested in them. In such case the remedy of these complainants would be complete at law, by enforcing their right to the land itself.

So, too, if the devise should be held to be not technically a devise upon condition, but a devise upon the conditional or contingent limitation that the estate was to be held by the town for the use and support of the minister designated, so long as there should be such minister to support, upon the determination of the estate devised by the limitation taking effect, there, too, the estate would vest in the heirs or residuary devisee, and their remedy would be by suit at law for the recovery of their estate in the land. But in neither of these cases would the complainants, if they are the parties in whom the estate would vest upon entry for the forfeiture, or upon the limitation taking effect, have any claim, as against the defendants, beyond that of setting up their legal estate to the land, and recovering it by a suit at law.

The devise, however, is not of an estate upon condition nor of an estate conditionally limited. No words are used of a character to indicate that it was intended by the testator that the estate should be limited to the town upon any contingency. On the contrary, the language used would seem clearly to indicate that it was intended by him to vest the entire estate in the town forever.

The other view suggested in the argument is, that the de-

vise is to the town, upon the trust that it shall be applied to the uses designated, and that, upon failure of the use, a trust results to the heir or residuary devisee.

Upon this view, if it be conceded to be correct, the same objection arises as upon the other, namely, that if such trust results, it is a trust estate in the land, and the remedy of the complainants is by proper proceedings to enforce their title to the land itself which cannot be done by this proceeding in equity.

But, upon a consideration of the nature of the devise and the uses and purposes to which it was given, we think it clear that if the devise be regarded as a devise to uses, which have failed, no trust results either to the heir or residuary devisee.

In *Hill* v. *Bishop of London*, 1 Atkins 620, Lord *Hardwicke* lays down the doctrine that no general rule can be adopted in construing a devise, in reference to the question whether a trust results to the heir, except in cases where real estate is devised to be sold for the payment of debts, and no more is said. In such cases a trust clearly results ; but if there appear any particular reason why the testator should intend any beneficial interest to the devisee, there are no precedents, he says, to warrant the court in saying that it shall not be a beneficial interest in the devisee, but a trust resulting to the heir.

In *King* v. *Denison*, 1 V. & B. 272, Lord *Eldon* also says, no positive rule can be laid down in what cases the devise will carry with it a beneficial character, and in what it will be construed a mere trust ; but in all cases the court will refuse to be governed by mere technical phraseology, and will extract the probable intention of the settler from the general scope of the instrument.

· Similar views are expressed by Sir *Wm. Grant*, in *Walton* v. *Walton*, 14 Ves. 322, and by Lord *Cowper*, in *Starkey* v. *Brooks*, 1 P. Wms. 391.

The intention of excluding the person vested with the legal estate from the usufructuary enjoyment may either be presumed by the court or may be actually expressed in the will. Thus, the

trust may be presumed, whenever in a devise a trust is declared of part of the estate, and nothing is said of the residue, for then the creation of the partial trust is to be considered to have been the sole object in view, and the interest undisposed of results to the settler or his heir.

In *King* v. *Denison,* above cited, it is said a distinction is to be observed between a devise to a person for a particular purpose, with no intention of conferring the beneficial interest, and a devise with a view of conferring a beneficial interest, but subject to a particular injunction. Thus, if lands be devised to A upon trust to pay debts, this is simply the creation of a trust, and the residue, after the payment of the debts, will result to the heir; but if the devise be to A, charged with or subject to the debts, the intention of the testator is to devise beneficially, subject to the charge; and then, whatever remains after the charge shall have been satisfied, will belong to the devisee.

In *Dawson* v. *Clark,* 15 Vesey 409, the testator gave his estate upon trust, to pay, and charged and chargeable with debts and specific legacies. Lord *Eldon* held it to be a beneficial devise. " The difficulty," he says, " is whether the words ' upon trust,' are to be considered to mean ' charged and chargeable with,' or *vice versa,*' but upon the whole he thought the devise gave the absolute property, subject to the charge.

The introduction of the words, " upon trust," or, " for the uses," may be evidence of the intention of the devisor not to confer upon the devisee a beneficial interest. *Woolett* v. *Harris,* 5 Mad. 452. But that construction may be negatived by the context or the general scope of the instrument. *Cunningham* v. *Mellish,* Pr. Ch. 31.

Now, applying these principles to the devise in this case, what was the intention of the testator, as gathered from the nature of the devise and the general scope of his will?

In terms, the devise is of the entire estate absolutely to the town. The purpose for which the devise was made was one which, in the contemplation of the testator, might be perpetual; and it was one for which, under statutory provisions in force at

the execution of the will and at the death of the testator, the town had authority to raise money, by tax, and apply it to that, as to other town purposes. Just so far as the land devised, or the income of it, might be applied for the purposes designated, it would relieve the town from the burthen which by law might rest upon them of supporting the minister designated, under a contract with the town.

It was, therefore, clearly indicated that the testator intended by the devise that the beneficial interest should vest in the town, subject, however, to the injunction that the benefit was to be enjoyed in the particular mode designated — the support of the minister referred to, so long as there might be such minister to support. Upon failure of such minister to whose use and support the fund might be applied, and by reason of which failure the town could no longer be benefitted by the devise in that particular mode, it must be supposed that the testator intended they should enjoy his bounty to an equal extent in any other legitimate mode. No trust consequently results to the heir or residuary devisee, but the town holds the estate to their own use.

It is unnecessary to consider the question whether, the devise being to uses, and the uses having failed, upon the doctrine of *cy pres*, chancery will order the fund to be applied to another use, as near as may be of the character of that designated by the testator, or whether that doctrine is to be considered as having no place in the law of this State ; for the complainants, as heirs or parties holding the rights of the residuary devisee under the will of Joseph Hall, have no interest in the application of those questions to this case. Upon the facts presented, those questions might be raised by the proper parties — those claiming to have the trust enforced for their benefit ; but these complainants are not in the situation to claim any interest in the land devised or the proceeds of the sale of it, even if it should be held that upon failure of the use the doctrine of *cy pres* could not be applied, as not having been adopted in this State, for the reason that no trust results to them ; but the whole beneficial interest, subject to the charge which the trust imposes, or rather

the injunction which the testator has given to enjoy it in the mode designated, was intended by the testator to vest wholly in the town.

The uses to which the land was devoted by the testator may possibly, upon a proper case and between proper parties to raise the question, be held to be such as to require that it, or the income of it, be applied to the support of the minister performing his official duties at the meeting-house designated, so long as there may be such, and then to the support of the minister who may be considered as succeeding him, or substituted in his place in the ministerial office, or to the use of the church and society, evidently in the contemplation of the testator in making the devise for the support of their minister; or it may be to the general purposes of the town, as the party intended by the devisor to be the beneficiary of his bounty.

But it is unnecessary to express any opinion upon these questions, beyond the views which have already been suggested, as they are questions in which these complainants have no interest; and the bill must, consequently, be

*Dismissed with costs.*